[Cite as *State v. Scott*, **2024-Ohio-919.**]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2023 CA 00049 |
| JACK E. SCOTT, JR. | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Court of
                              Common Pleas, Case No. 2022 CR 00747


JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       March 12, 2024


APPEARANCES:


For Plaintiff-Appellee            For Defendant-Appellant

JENNY WELLS                       BRIAN A. SMITH
Licking County Prosecuting Attorney   123 S. Miller Road, Suite 250
                                  Akron, Ohio 44333
KENNETH W. OSWALT
Assistant Prosecuting Attorney
20 S. Second Street, 4th Floor
Newark, Ohio 43055

*Hoffman, P.J.*

{¶1}    Defendant-appellant Jack E. Scott, Jr. appeals the judgment entered by the Licking County Common Pleas Court convicting him following jury trial of nine counts of rape (R.C. 2907.02(A)(1)(b), R.C. 2907.02(A)(2)), four counts of gross sexual imposition (R.C. 2907.05(A)(4)), and two counts of unlawful sexual conduct with a minor (R.C. 2907.04(A)), and sentencing him to an aggregate term of incarceration of life without parole.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On November 7, 2022, the thirteen-year-old victim was living in Licking County, Ohio with her step-grandmother, her aunt, four of her cousins, and Appellant. Newark police received a report Appellant had touched the victim inappropriately in the morning when she was getting ready for school.   The victim spoke with Newark Police Detective Steve Vanoy at school.  The victim told police in the morning while getting ready for school, she had let the dogs outside, and when she came back inside, Appellant asked her to come in the bathroom.  Appellant touched the victim's vagina with his hands under her clothing, then took her hand and made her touch his penis.  Appellant's DNA was found in the victim's underwear and pubic hair combings.

{¶3}    The pattern of sexual abuse started when the victim was six years old.  She woke up in her bedroom to discover Appellant touching her vagina.  He told the victim to be quiet, and what he was doing was very bad.  The sexual abuse continued over the next seven years, and including touching, cunnilingus, fellatio, anal intercourse, and vaginal intercourse.  During the periods of time when Appellant was not living in the same home with the victim, the family would visit on weekends, and Appellant would engage in sexual activity with the victim.  When the victim was eight years old, she told her step-

grandmother, who was the victim's legal custodian, what Appellant was doing to her. Her step-grandmother did not believe the victim. Appellant threatened to kill the victim if she told anyone.

{¶4} After speaking with the victim at school, Detective Vanoy interviewed Appellant at his home. The next day, Appellant came to the police station to retrieve his cell phone, and spoke with Detective Vanoy again. Although Appellant initially denied anything sexual occurred between himself and the victim, Appellant eventually told the detective on the morning of November 7, 2022, the victim came into the bathroom and asked him about oral sex. He has difficulty explaining things, and so he licked her vaginal area to demonstrate. He turned to masturbate into a trash can, and the victim put her mouth on his penis. He claimed this was the only time anything sexual happened between himself and the victim.

{¶5} Appellant was indicted by the Licking County Grand Jury with nine counts of rape, four counts of gross sexual imposition, and two counts of unlawful sexual conduct with a minor. Appellant filed a motion to suppress statements he made to police at his home and at the police station on the basis he was not *Mirandized* or advised of his right to counsel. After a hearing, the trial court overruled the motion.

{¶6} The case proceeded to jury trial in the Licking County Common Pleas Court. Appellant testified he had never touched the victim in a sexual manner. He testified he did not live with the victim from 2016-2019, and had no access to the victim alone. He testified he falsely admitted to Detective Vanoy he had assaulted the victim in hopes of talking to someone other than the detective. He testified he smokes cigarettes, and spits the saliva from where the tobacco from the tubes comes through either between his legs

while sitting on the toilet, or into the bathtub.  He believed the victim sat on his saliva and scooted across it, explaining why his DNA was found in her underwear and pubic hair.

{¶7} The jury found Appellant guilty of all charges.  The trial court convicted him in accordance with the jury's verdict, sentencing him to an aggregate term of incarceration of life without parole.  It is from the May 26, 2023 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS, IN VIOLATION OF APPELLANT'S RIGHT AGAINST SELF-INCRIMINATION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

III. THE TRIAL COURT ABUSED ITS DISCRETION IN STRIKING JUDITH TEEGARDIN'S TESTIMONY, BASED ON JUDITH TEEGARDIN ASSERTING HER FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

IV. THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S MOTION FOR A MISTRIAL, IN VIOLATION OF APPELLANT'S

RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

I.

{¶8}    In his first assignment of error, Appellant argues his convictions are against the manifest weight of the evidence.  He argues the victim's testimony was not credible.  He argues the evidence demonstrated the victim wanted to go live with her parents, and was therefore motivated to lie in order to leave her step-grandmother's custody.  He argues his explanation for how his DNA ended up in the victim's vaginal area was credible, as was his testimony he did not have access to the victim alone during much of the time frame she testified the acts occurred.

{¶9}    In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶10} Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b) and (A)(2):

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

**{¶11}** Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4):

No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶12}** Appellant was convicted of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A):

No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

{¶13} Appellant does not argue the victim's testimony, if believed, was insufficient to convict him of the charges, but rather argues his testimony was credible, while the victim's testimony was not credible. Appellant argues the victim was motivated to lie because she wanted to live with her parents instead of in the home where Appellant resided. However, her desire to live with her parents could easily be explained as a desire to escape Appellant's sexual abuse.

{¶14} Further, while Appellant claimed at trial he falsely confessed to Detective Vanoy in order to speak to someone else, the DNA evidence found on the victim corroborates his confession he had engaged in oral sex with the victim before school on the morning the DNA testing occurred. We find the jury did not lose its way in believing the DNA evidence was the result of the sexual conduct he confessed to, rather than his trial explanation of spitting on the toilet seat or in the bathtub and the victim scooting in his saliva.

{¶15} The victim was able to recount multiple places where Appellant engaged in different types of sexual conduct with her over an extended number of years, including weekend family visits at times when Appellant did not reside in the home. We find the jury did not lose its way in believing the victim's testimony rather than Appellant's

testimony. The judgments of conviction are not against the manifest weight of the evidence.

{¶16} The first assignment of error is overruled.

II.

{¶17} In his second assignment of error, Appellant argues the trial court erred in overruling his motion to suppress statements made to Detective Vanoy.

{¶18} At the outset, we note Appellant has filed a motion to supplement the record with audio recordings of the statements he made to Detective Vanoy at his home, and of his statement made at the police station. Appellant's motion to supplement was filed pursuant to App. R. 9(E), which provides:

> **(E) Correction or Modification of the Record**. If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

**{¶19}** The rule allows the record to be supplemented by material omitted from the record by mistake or accident. However, a reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new material. *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978). In the instant case, while portions of the audio recordings were played for the trial court during the suppression hearing, the recordings were not offered into evidence and were not admitted into evidence. Therefore, the full recordings were not a part of the record before the trial court. This Court therefore cannot add the recordings to the record and decide the issues raised concerning suppression of Appellant's statements on the basis of material not presented to the trial court. Appellant's motion to supplement the record is overruled.

**{¶20}** Appellant first argues the trial court erred in finding he was not in custody for purposes of *Miranda* at the time he was questioned at the police station.

**{¶21}** A duty to administer *Miranda* warnings arises only when an accused is taken into custody. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). For purposes of Miranda warnings, "custody" is defined as a formal arrest or restraint on the freedom of movement to the degree associated with a formal arrest. *State v. Mason*, 82 Ohio St.3d 144, 154, 694 N.E.2d 932 (1998). In order to determine whether a person was in custody, the court should apply a totality-of-circumstances test, including where the interrogation occurred, whether the investigation had focused on the subject, whether the objective indicia of arrest were present, and the length of the questioning involved. *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

{¶22} Appellant argues a reasonable person in his circumstances would not have felt free to go because he did not have his cell phone, which he had come to the police station to retrieve, and he was interviewed by two separate individuals, Detective Vanoy and an employee of Children's Services, with the door closed. The trial court found Appellant was not in custody because he voluntarily drove himself to the police station, was advised he was not under arrest and was free to leave at any time, and the door was only closed for privacy.

{¶23} As discussed above, the portions of the interview recording which were played for the trial court are not a part of the record before this Court on appeal. However, Detective Vanoy testified he informed Appellant he was free to go, noted Appellant was there voluntarily, and told Appellant he was not under arrest. Supp. Tr. 14. The detective testified Appellant indicated he understood. *Id.* The detective also testified Appellant stated he had come down to get his cell phone, and out of respect, Appellant agreed to stay and talk to Detective Vanoy. Supp. Tr. 15. On cross-examination, Detective Vanoy testified he gave Appellant the option on whether or not he wanted the door closed, and his choice was to leave it open. Supp. Tr. 20.[1]

{¶24} We find based on Detective Vanoy's testimony the trial court did not err in finding Appellant was not in custody at the time he was interviewed at the police station. While two persons were present for the interview, only one was a police officer, and nothing in the record indicates the employee of Children's Services participated in questioning Appellant. Appellant indicated he understood he was free to go and was not

---

[1] If at some point during the interview the door was closed for privacy reasons as found by the trial court, this is not a part of the record before this Court on appeal.

under arrest. Appellant affirmatively indicated he came to the police station to retrieve his cell phone, and agreed to stay and speak with Det. Vanoy out of respect.

{¶25} Appellant also argues he asserted his right to counsel during the interview, and the trial court therefore erred in finding his post-arrest statements to police were admissible. Appellant did not raise this argument in the trial court, and the trial court did not expressly rule on Appellant's claim he asserted a right to counsel. However, the trial court noted in its judgment after approximately 39 minutes of interviewing, when the defendant indicated he wished to talk to someone, he was placed under arrest and his *Miranda* warnings were provided to him.

{¶26} "It is well-settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived." *Columbus v. Ridley*, 2015-Ohio-4968, 50 N.E.3d 934, ¶ 28 (10th Dist.), *quoting State v. Barrett*, 10th Dist. Franklin No. 11AP-375, 2011-Ohio-4986, 2011 WL 4489169, ¶ 13; *see State v. Comen,* 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990). This principle also applies to arguments not asserted either in a written motion to suppress or at the suppression hearing. *Id.*

{¶27} Again, the recording of the interview played for the trial court is not a part of the record before this Court on appeal. During the questioning of Detective Vanoy, the prosecutor stated on the record, "I think I have around about 39 minute point where he indicates that perhaps he'd like to speak to somebody about things." Supp. Tr. 15.

{¶28} Police investigators must honor an invocation of the right to cut off questioning only if such invocation is unambiguous. *State v. Murphy,* 91 Ohio St.3d 516, 520, 747 N.E.2d 765 (2001), *citing Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). "If the suspect's statement is not an unambiguous or

unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis*, *supra*; *State v. Brown,* 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 18. The officers also have no obligation to ask clarifying questions to ascertain if the suspect is attempting to invoke his right to counsel. *Davis* at 461-462. Relying on *Davis*, the Supreme Court of Ohio held, "If the suspect says something that may or may not be an invocation of the right, police may continue to question him; they need not treat the ambiguous statement as an invocation or try to clear up the ambiguity." *State v. Murphy, supra* at 521.

{¶29} The transcript of the suppression hearing suggests Appellant indicated "perhaps he'd like to speak to somebody about things." We find this is not an unambiguous, unequivocal request for counsel, and the detective therefore did not have an obligation to terminate questioning, nor did he have an obligation to ask clarifying questions to ascertain if Appellant was attempting to invoke his right to counsel. The detective testified there was no additional time in the remaining minutes of the recording, which it appears were not played for the trial court, where Appellant asserted a right to an attorney. Supp. Tr. 16.

{¶30} We find the trial court did not err in overruling Appellant's motion to suppress. The second assignment of error is overruled.

III.

{¶31} In his third assignment of error, Appellant argues the trial court erred in striking the testimony of Judith Teegardin after she pled the Fifth Amendment, without inquiring further into her desire to plead the Fifth.

**{¶32}** Teegardin was called as a witness for the defense. Because she was facing charges as the custodian of the child victim, Teegardin was represented by counsel during her testimony. Teegardin testified on direct examination concerning the times and places where Appellant resided with the family. She testified Appellant was not alone with the victim, and testified the victim expressed a desire to live with her natural parents.

**{¶33}** On cross-examination, after confirming her place of residence, the following colloquy occurred:

Q. Okay. And it would be fair to say that since you obtained custody of [the victim] when she was approximately three years old that you have moved quite a few times throughout that - - her life; correct?

Well, there was a period there where we was –

Q. It's yes or no. Have you moved quite a few times?

A: Can I plead the Fifth?

THE COURT: No. Well, yes, you can.

A: I plead the Fifth.

THE COURT: Are you done then?

THE WITNESS: Yes, please.

THE COURT: Okay.

MS. WELLS [PROSECUTOR]: Your Honor, I would just state that pleading the Fifth is not I am going to plead the Fifth when it's convenient and not when it's not convenient.

THE COURT: Well, I don't think I can make her testify to things that are going to incriminate her.

MS. WELLS: The State would ask that the entirety of her previous testimony be stricken as well since we've not had the opportunity to cross-examine this witness.

THE COURT: Okay. Thank you. You're done.

THE WITNESS: I just don't like being made out to be a monster.

THE COURT: That's really not the reason to do that, ma'am. Thank you.

**{¶34}** Tr. (II) 339-40.

**{¶35}** The court then recessed for lunch. After lunch, the attorneys discussed an issue regarding Appellant's next witness, Jacinda Brooks. Appellant then raised an issue about Teegardin's testimony, noting at a status conference a week prior to trial, there was the potential for Teegardin to take the Fifth. Appellant's counsel stated it was unusual to have a witness only plead the Fifth during cross-examination, having completed her testimony on direct examination, and this was "an issue for us to delve into." Tr. (II) 346.

**{¶36}** The State asked for the opportunity to put Teegardin back on the stand and have her take the Fifth Amendment as to each question the State asked. The trial court stated there was no point in having the witness plead the Fifth ten times. The trial court found it was a "sleazy trick" for the witness to testify on direct then choose to take the Fifth only on cross-examination. Tr. (II) 348. The trial court stated it was inclined to strike her entire testimony. Appellant moved for a mistrial on the basis Teegardin's actions were

harmful to his case. The motion was overruled, and the trial court struck Teegardin's testimony.

**{¶37}** When a witness asserts a privilege against self-incrimination, a court may not rely upon the witness's claim alone, but has a duty to determine whether the witness's refusal to answer is justified. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 45 *citing Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The trial judge must determine if a proposed witness's testimony would be self-incriminating. *Id.; State v. Landrum*, 53 Ohio St.3d 107, 120–121, 559 N.E.2d 710 (1990); *McGorray v. Sutter*, 80 Ohio St. 400, 89 N.E. 10 (1909), paragraph two of the syllabus. A valid assertion exists where a witness has reasonable cause to apprehend a real danger of incrimination. *United States v. Apfelbaum*, 445 U.S. 115, 127, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980); *In re Morganroth*, 718 F.2d 161, 167 (C.A. 6 1983); *State v. Linkous*, 4th Dist. Scioto No. 12CA3517, 2013-Ohio-5853, 2013 WL 6918875, ¶ 55. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer * * * might be dangerous because injurious disclosure could result. * * *." *Hoffman*, 341 U.S. at 486–487, 71 S.Ct. 814. The privilege extends to answers which would furnish a link in the chain of evidence, exposing the witness to criminal liability. *Id.* at 486, 71 S.Ct. 814; *Blau v. United States*, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950); *State v. Landrum*, 53 Ohio St.3d at 120–121, 559 N.E.2d 710.

**{¶38}** The Ohio Supreme Court held in *Arnold, supra*:

The trial court's inquiry into the basis of a witness's assertion of the privilege is critical, even when the purported basis seems implausible, frivolous, or suspect. The trial court must tread lightly, of course, because "if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Hoffman*, 341 U.S. at 486, 71 S.Ct. 814, 95 L.Ed. 1118. Thus, the trial court "must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment" in its analysis of the propriety of the claim. *Sec. & Exchange Comm. v. Graystone Nash, Inc.* 25 F.3d 187, 192 (3d Cir. 1994). And the record of the trial court's proceedings should clearly reflect the court's inquiries into the bases of the claim of privilege and the proponent's responses.

**{¶39}** *Arnold* at ¶ 47.

**{¶40}** In the instant case, the trial court did not conduct an inquiry into the basis of Teegardin's decision to invoke her privilege against self-incrimination, but terminated her testimony as soon as she asked to plead the Fifth Amendment. The State argues it is apparent from the statements in the record the possibility of Teegardin pleading the Fifth was discussed at a status conference, which is not a part of the record before this Court, and we therefore must affirm because we do not have a complete record. We find the fact a possibility of Teegardin pleading the Fifth was discussed prior to trial did not

relieve the trial court of its duty to inquire as to the basis of her decision to plead the Fifth in response to a specific question at trial. We note even after Teegardin volunteered her reason for pleading the Fifth being she didn't want to be made out to be a monster, the trial court informed her that was not a reason to take the Fifth. However, the trial court excused the witness immediately without additional inquiry. We find the trial court erred in failing to inquire into the basis for Teegardin's decision to plead the Fifth, instead choosing to immediately dismiss her and strike her testimony.

{¶41} However, in *Arnold*, the Ohio Supreme Court found error in failing to conduct a proper inquiry into assertion of the right against self-incrimination is subject to a harmless error analysis. Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, *citing United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

{¶42} In *Arnold*, the Ohio Supreme Court held in the context of failure to inquire as to the basis for invocation of the right against self-incrimination, error may be harmless where the evidence which was excluded by the witness pleading the Fifth is merely cumulative of other evidence in the case. *Arnold*, *supra*, at ¶54. In the instant case, Teegardin's testimony on direct examination which was stricken by the trial court was cumulative of Appellant's testimony, and to some extent, the testimony of the victim. Appellant's exhibits, letters written by the victim expressing a desire to live with her

parents, were identified by Teegardin during her stricken testimony; however, these exhibits were ultimately admitted through the testimony of the victim on cross-examination.  We find the error in the instant case had no impact on the verdict and was harmless beyond a reasonable doubt.

**{¶43}** The third assignment of error is overruled.

IV.

**{¶44}** In the fourth assignment of error, Appellant argues the trial court erred in overruling his motion for a mistrial based on the events surrounding the testimony of Teegardin, and also based on the exclusion of the testimony of Jacinda Brooks based on an alleged violation by Appellant of the court's separation of witnesses order.

**{¶45}** A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened. *State v. Reynolds,* 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497 (1988). The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin,* 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9 (1991). When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn,* 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793–794 (1992).

**{¶46}** As to the irregularities surrounding Teegardin's testimony, Appellant has not demonstrated a fair trial was no longer possible because she was excused and the trial court struck her testimony from the record.  As discussed earlier in this opinion, Teegardin's testimony was merely cumulative of other evidence in the case, and Appellant's exhibits identified by Teegardin were entered into evidence through the

testimony of the victim.  We find the trial court did not abuse its discretion in overruling Appellant's motion for mistrial regarding the testimony of Teegardin.

{¶47}  Before Appellant called Jacinda Brooks as a witness, the State represented to the trial court the previous night after court, Appellant made five phone calls from the jail to Brooks, and discussed with Brooks the testimony of the victim and the detective. Based on Appellant's violation of the separation of witnesses order, the trial court precluded Brooks from testifying on Appellant's behalf.

{¶48}  Appellant argues the State did not present evidence demonstrating the content of the phone calls to Brooks, and merely relied on the representations of the prosecutor concerning the conduct.  However, Appellant did not proffer the testimony of Brooks.  In the absence of a proffer, we cannot find a fair trial was made impossible by the trial court's exclusion of Brooks's testimony.  We find Appellant has not demonstrated the trial court abused its discretion in denying his motion for mistrial.

{¶49} The fourth assignment of error is overruled. The judgment of the Licking County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Baldwin, J. and

King, J. concur